## Krieger v. Title Insurance & Trust Co. et al.

(Decided June 11, 1935.)

LEE & KRIEGER for appellant.

JOHN MARSHALL, Jr., J. C. GRAVES and ELLIOTT LEE MADDOX for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

We have heretofore determined questions in this case not here presented. See Fidelity & Columbia Trust Co. v. Schmidt, 245 Ky. 432, 53 S. W. (2d) 713; Masonic Widows' & Orphans' Home and Infirmary et al. v. Title Insurance & Trust Co. et al., 248 Ky. 787, 59 S. W. (2d) 987 and Louisville Title Co.'s Receiver et al. v. Crab Orchard Banking Co. et al., 249 Ky. 736, 61 S. W. (2d) 615.

The case is now presented for a declaration of the power of the Title Insurance & Trust Company as trustee and the rights of the bondholders, including those represented by the Louisville Title Mortgage Company, as authorized by sections 639a—1 and 639a—2, Civ. Code Prac.

The trusts herein involved were created by like instruments. The holders of the bonds under these like instruments are approximately 4,000 in number.

For a statement of the facts involved and the issues presented, we adopt, in part, A. C. Krieger's brief, which reads:

"The Louisville Title Company had made many loans, evidenced by bonds executed by the mortgagor to it as trustee, the payment of which were secured by mortgage upon the property of the mortgagor. The Title Company immediately offered these bonds for sale to the general public and many of each issue were sold to the public. After the Louisville Title Company suspended business, by proper proceedings, the Fidelity & Columbia Trust Company was appointed by the court the receiver of the individual assets of the Louisville Title Company, and also as trustee of the various trust estates in which the Louisville Title Company was trustee, and said Trust Company was given such powers in the administration of said trust estates as were theretofore enjoyed by the Louisville Title Company.

"Thereafter a number of bondholders organized two companies; one of them known as the Louisville Title Mortgage Company, and the other was known as the Title Insurance & Trust Company. The first of these companies was organized mainly for the purpose of acting as trustee of the various bonds of the Louisville Title Company deposited by their holders in aid of their plan of reorganization. The second of these companies was organized mainly to act as trustee in the various trusts of which the Louisville Title Company was trustee, and said Title Insurance & Trust Company was appointed the trustee of said trusts in place of the Fidelity & Columbia Trust Company and is now acting as such trustee. As such trustee, the plain-

tiff, Title Insurance & Trust Company, instituted this action for advice and for declaration of its rights against:

"(a) The Fidelity & Columbia Trust Company as receiver of the individual assets of the Louisville Title Company, and individually as the owner or trustee of certain bonds of a particular issue.

"(b) This defendant, individually as the owner of certain bonds of a particular issue, and as representative of all beneficiaries of said trusts, except those represented by the defendant, Louisville Title Mortgage Company. This class of beneficiaries, of whom this defendant is one, is composed of the following described two groups of owners of bonds secured by mortgages executed to the Louisville Title Company, Trustee, to-wit:

"(1) Those holders of bonds secured by mortgages executed to the Louisville Title Company, Trustee, who have refused to deposit their bonds with the Louisville Title Mortgage Company for the purpose of organizing that Company, or the Title Insurance & Trust Company, the plaintiff herein, and who have also refused to deposit their bonds with the plaintiff herein for use by it in foreclosing the mortgages which are the security for the payment of said bonds.

"(2) Those holders of bonds secured by mortgages executed to the Louisville Title Company, Trustee, who have deposited them with the plaintiff herein for use by it in foreclosing the mortgages which are the security for the payment of said bonds.

"(c) Since the various trusts were created by similar instruments and the position of all bondholders of each group were identical, the lower court by its judgment permitted this defendant to defend this action as the representative of, and in behalf of the two groups hereinabove mentioned.

"The lower court also permitted the defendant, Louisville Title Mortgage Company, to defend this action as the representative of, and in behalf of

all holders of said bonds who have deposited their bonds with said Louisville Title Mortgage Company.''

The decree of the circuit court declared the rights of the bondholders and the trustee, as well as the latter's power in virtue of the terms and provisions of the mortgage deeds of trust.

Krieger, in his brief, makes no complaint as to the duties which the court's decree imposed upon the Title Insurance & Trust Company as trustee. He concedes that the duties required by the judgment should be imposed upon it. But he complains, insistently, because:

"(a) The power of the plaintiff trustee to accept a voluntary conveyance to it as trustee of the property, subject to the mortgage of which it is trustee, and in consideration of said conveyance to it, to release the conveying mortgagor from all further liability.

"(b) The power of the plaintiff trustee to institute foreclosure proceedings without making the non-depositing bondholders parties thereto secure by purchase as trustee of all bondholders in that proceeding title to the property therein involved and sell same at such price as it considers advisable without the consent of such non-depositing bondholders.''

The duty devolves upon us to determine and declare the power of the trustee under the mortgage deeds of trust, as it concerns the trustee and the bondholders.

The fifth clause of the mortgage imposes the obligation on the mortgagor to keep the mortgaged property insured at his cost, to pay the taxes and assessments against the same, and, if he fails to do so, either the trustee or the holder of the bonds may pay the same and charge the sums paid, with interest at the rate of 6 per cent. per annum, payable semiannually, to the mortgagor.

The sixth clause provides that if the mortgagor fails to pay the insurance, taxes, and assessments when the same become due, or fails to pay the same on demand of the trustee or the holder of the bonds, or fails to pay any bond when the same becomes due, or

any coupons attached thereto within ten days after such coupons become due, or if he transfers the title of the property (except by will or by operation of law), without the consent of the trustee, "* * * then and in any of such cases the holder of such overdue bond or coupon, or of any other demand mentioned in said paragraph fifth, if he shall first surrender to the Trustee for that purpose all evidences of debt held by him hereunder, may require the Trustee to declare due all bonds, coupons, debts and demands hereby secured and to forthwith proceed to collect the same and enforce this mortgage deed of trust by suit or otherwise; and in any of such cases the Trustee may enter on the mortgaged premises, collect the rents and profits thereof, and after paying all expenses of such collection, and a reasonable compensation for itself, including fees paid to its attorneys in this behalf, shall apply the money collected to the pro rata satisfaction of the debts and demands hereby secured. Any action that may be required of the Trustee under this section may be taken by the Trustee without it being so required.''

The bonds provide that "the covenants of said mortgage deed of trust securing this bond and its interest coupons are made a part thereof as if herein written in full." This provision thus incorporates therein covenants (5) and (6) of the mortgage deeds of trust.

The trustee designated in the mortgage deeds of trust by an indorsement on the bonds guaranteed their payment.

To correctly and properly ascertain and determine the power of the trustee, it is necessary to consider the mortgage deed of trust, the bonds, and the trustee's guaranty indorsed on the latter. For the three together establish the contractual relations of the trustee and the bondholders.

Kreiger maintains that the language of the mortgage deed of trust created "but one trust"—that of holding the title to the equitable lien for the benefit of the bondholders with authority in the trustee to collect as the agent of the bondholders the payments specified in the mortgage as of date of their maturity, and to enforce in behalf of the bondholders the collection of such indebtedness by the institution of the proper action to subject the mortgaged property to the satisfaction of

such indebtedness. The trust instruments here involved gave the trustee authority to "* * * collect the same and enforce this mortgage deed of trust by suit. In such action, the trustee, by implication, was authorized to secure for the benefit of the bondholders a money judgment for the amount due them and enforce the payment of such judgment by a sale of the mortgaged property. By such judgment, the indebtedness of the mortgagor, as evidenced by the bonds, has become merged into the money judgment against him and the trustee is a legal holder of such judgment as trustee for the debtors of the mortgagor, in the same proportion as the bonds held for each debtor compare to the total bonds outstanding as of the institution of the action."

He concedes that when a sale of the mortgaged property is made in accordance with a judgment of the court, if no bid sufficient to pay the bonds secured by the mortgage is made for the property, "it is the duty of the trustee by implication, to buy the property in order to protect the debtors of the mortgagor in their security." But he contends that when the title to the mortgaged property is thus acquired by the trustee, it holds the legal title to same in trust for the debtors who become the equitable owners as tenants in common of the realty in the same proportion as their bond holdings compare to the total outstanding bonds.

The trustee insists that not only is it its implied duty to bid for the property when sold to pay the judgment, if no bid is made for a sum sufficient to pay it, but that after it bids for, and receives the commissioner's deed to, the property in accordance with the judgment, it still holds the property as trustee, with the power to dispose of it, without further authority or consent of the bondholders, and thus reduce the same to cash for distribution among them in the same proportion as their bond holdings compare to the total outstanding bonds secured by the mortgage deed of trust.

It is a matter of general knowledge that divers mortgage deeds of trust giving to the trustee not always the same power, are executed to secure bonds for various purposes. Such instruments, seldom, if ever, contain the identical terms, conditions, or employ the same words, phrases, or clauses defining specifically the power

of the trustee. The construction of the one of such instruments is often no precedent for, or an aid to, a correct construction of another.

In determining the meaning of the words and phrases employed therein, it is proper to examine the instrument as a whole and analyze the words and phrases used therein, considering the subject-matter, the situation of the parties and their purpose in making the instrument. Bare v. Cole et al. (Iowa) 260 N. W. 338.

The language of the parties to the instrument, as it is written, in every case is the touchstone by which their intent and purpose is to be determined.

An examination of clause 6 of the mortgage deeds of trust here under consideration discloses that it confers upon the bondholder thereby secured and the trustee like and co-ordinate power in case of the mortgagor's default. In addition to this, if the mortgagor "in any such cases" permits or suffers a bond or a coupon to become overdue, the privilege is conferred upon the holder of the bonds (a) "first to surrender" to the trustee all evidences of debt held by him, for collection; (b) to "require the trustee to declare due all bonds and coupons" and to cast upon the trustee the responsibility; (c) "to forthwith collect the same by suit or otherwise." And "any action that may be required of the trustee under this section may be taken by the trustee without it being so required."

It is apparent that this language means if, and when, the holder surrenders all evidences of debt held by him to the trustee, it acquires thereby the actual possession thereof in the same sense and for the same purpose as if it were the sole owner of the bonds surrendered. The word "collect," as used in the phrase to "forthwith collect," does not mean "merely assemble" or "reduced to possession," for the bonds and coupons were already enforceable obligations, and after a surrender by the holder, they are in the possession of the trustee for collection for a specific purpose, i. e., the payment of the bonds. The word "collect" in its ordinary signification includes the use of the usual means necessary or required to accomplish a collection. Ryan v. Tudor, 31 Kan. 366, 2 P. 797; Ekblad v. Hanson, 85 Kan. 541, 117 P. 1028. Ordinarily, authority to

another to collect includes the implied duty to use all ordinary means for collection, and among these are the employment of counsel and the institution of suits. Ryan v. Tudor, supra. The signification of the word "collect" is emphasized by the language relating to the authority of the bondholder to specifically direct the trustee to enforce collection "by suit or otherwise." The word "otherwise," as so used, connotes the intention to confer greater authority on the trustee than the mere authority to enforce collection by suit which ordinarily carries the implied power to bid in trust property when sold under a decree, in order to prevent its sacrifice. As it is here employed, it should not be construed to limit the power of the trustee to collect by suit, or in a proceeding ejusdem generis. It at least means to collect by a different method, different from that to which it relates; i. e., by other means contrarily, "in a different manner; in any other way; or in other ways; differently." State v. Scott, 35 Wyo. 108, 247 P. 699, 710.

The trustee's guaranty indorsed on the bonds made it pecuniarily interested with the bondholder in the payment of the bonds. This extra contractual relation, coupled with clause 6, expressly conferring upon the bondhloder the right to impose the responsibility upon the trustee to collect the bonds and to look to it as guarantor for the ultimate payment of the bonds, distinguishes the case from that of an ordinary trustee acting under the usual ordinary mortgage deed of trust.

In recognition of the trustee's ultimate liability for the payment of the bonds, and of the right of the bondholder to look to it for such payment, if the mortgaged property, for any reason, proves insufficient for that purpose, clause 6 was intentionally included to confer upon the trustee for self-protection as against its liability as guarantor the plenary power to collect, in its discretion, by suit or otherwise, without the consent of the bondholder, the proceeds of the mortgaged property for the payment of the bonds. The power conferred by this clause affords protection to the trustee against its liability as guarantor, which is perfectly consistent with its obligations and responsibilities as trustee.

The clear intent and purpose of this clause was to confer upon either the bondholder or the trustee, or entirely upon the latter, if the former surrendered to

it all evidences of debt, the power to collect either by accepting a deed of the mortgagor to the trust property, if such course in its discretion was for the best interest of both the bondholder and the trustee, and hold the title to same, as trustee, until it could sell and convey the property and by this method receive the proceeds for the use and benefit of the bondholder or sell the mortgaged property by suit, and if necessary to avert a sacrifice, bid it in, obtain title by a commissioner's deed, sell and convey it, receive the proceeds and pay the bonds in full or pro rata, and in the latter case, the trustee as guarantor, to satisfy the remainder. Indubitably, whatever the bondholder can do for himself under the authority of clause 6, upon his surrender of all evidences of the debt to it, or if it so desires without waiting for a surrender thereof, the trustee may also do to obtain the proceeds of the mortgaged property for the payment of the bonds, and thereafter as guarantor satisfy the balance due if such there be after applying the proceeds of the mortgaged property.

The power of the trustee designated in the mortgage deeds of trust, and in the bonds, is continued in its successor in office without the liability of a guarantor.

A trustee, under the usual, ordinary mortgage deed of trust, has, by necessary implication, all power necessary to carry out the purpose of the trust. Vansant v. Spillman, 193 Ky. 788, 237 S. W. 379; Collopy v. Dorman, 250 Ky. 513, 53 S. W. 610; Luxon v. Wilgus, 7 Bush, 205; First National Bank of Carlisle v. Lee, 66 S. W. 413, 23 Ky. Law Rep. 1897; Vickers v. Vickers, 189 Ky. 323, 225 S. W. 44; Krieger v. Bissell, Trustee, 80 Ky. 330; Nay Aug Lbr. Co. v. Scranton Trust Co., 240 Pa. 500, 87 A. 843, Ann. Cas. 1915A, 235; Commonwealth v. Susquehanna & Del. R. R. Co., 122 Pa. 306, 15 A. 448, 1 L. R. A. 225; Beckmam v. Emery-Thompson Mach. & Supply Co., 9 Ohio App. 275; Hoffman v. First Bond & Mortg. Co., 116 Conn. 320, 164 A. 656; Silver v. Wickfield Farms, 209 Iowa, 856, 227 N. W. 97; First Nat. Bank v. Neil, 137 Kan. 436, 20 P. (2d) 528, 88 A. L. R. 1252; contra, see Detroit Trust Co. v. Stormfeltz-Lovely Co., 257 Mich. 655, 242 N. W. 227, 88 A. L. R. 1263; Werner, Harris & Buck v. Equitable Trust Co. (C. C. A.) 35 F. (2d) 513; Equitable Trust Co. v. U. S. Oil & Refin. Co. (D. C.) 35 F. (2d) 508.

Though the mortgage deeds of trust under review should be construed as not conferring upon the trustee the power, after it acquires title to the mortgaged property, to sell and convey the same and thus acquire the cash with which to pay the bonds, or that sum which it derives from a sale, a court of equity, to promote the welfare and protect the interest of the bondholder, has the inherent power on a proper showing, by an appropriate order, to confer such power upon it. Hegan v. Netherland et al., 141 Ky. 686, 133 S. W. 546; Vickers v. Vickers, supra.

In any case, if the instrument creating a trust prohibits alienation by the trustee to be operative, the inhibition must be so clear and free from doubt as to leave the court no room for misconstruing the language used, otherwise the court may confer such power upon the trustee. Latta v. Louisville Trust Co., 198 Ky. 45, 247 S. W. 1103. Also a trustee clothed by the trust instrument with power to sell the trust property may do so in any way not forbidden by law, acting honestly, in good faith, and exercising that degree of acumen and diligence which ordinary prudent men ordinarily exercise under like conditions and circumstances. This, the trustee herein, in our opinion, by the mortgage deeds of trust, is authorized to do for the purpose of paying the bonds secured thereby.

The judgment of the circuit court, whether it be regarded as predicated upon the language of clause 6 or construed as the court conferring upon the trustee the power authorized therein, is consistent with our views.

Wherefore, it is affirmed.